UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE
NORTHEAST DIVISION AT COOKEVILLE

JONATHAN HESLET and
BRANDY HESLET,

    Plaintiffs,

vs.                                      NO. _____
                                                JURY DEMAND

FEDEX FREIGHT, INC.

    Defendant.
_____/

## COMPLAINT

Plaintiffs, JONATHAN HESLET and BRANDY HESLET, through their attorneys of record, hereby sue the defendant FEDEX FREIGHT, INC., and for their claims for relief, state as follows:

### PARTIES

1. Plaintiffs, JONATHAN HESLET and BRANDY HESLET, at the time of this accident, were residents of Little Elm, Texas and currently reside in Maryland ("Plaintiffs" collectively).

2. On information and belief, Defendant FEDEX FREIGHT, INC.[1] is a foreign, for-profit corporation, with a principal office located at 2200 Forward Drive, Harrison, Arkansas 72601-2004. FEDEX FREIGHT, INC., is registered with the

---

[1] FedEx Freight, Inc. may also be referred to as "FedEx" or "Defendant" for ease of reference.

Department of Transportation ("DOT"), No. 239039, and is also registered as a motor carrier, registration number MC-121805, with the Federal Motor Carrier Safety Administration ("FMCSA"). FEDEX FREIGHT, INC. may be served process at CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. 1332(a)(1) as complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interests and costs. The crash complained of occurred in this judicial district and this Court is the appropriate venue.

## FACTS

4. On March 4, 2017 at or nearly before 4:37 a.m., Adam Phillips ("FedEx Driver"), a professional commercial vehicle driver, operated a tractor-trailer, longer combination vehicle (LCV), which included a double trailer, owned and/or leased by Defendant FedEx Freight, Inc.[2]

5. The 18-Wheeler had a VIN number 1XKAA48X1DJ255161 and was a 2013 Kenworth, plate number 2133376. The first trailer had Indiana Plate number T417952 and the second trailer had Indiana Plate number P356803.

6. Defendant Phillips operated under the DOT/FMCSA authority of FedEx Freight, Inc. and as such, FedEx Freight, Inc. is vicariously liable for Defendant Phillips' acts and/or omissions, either directly as a company employee, or, if

---

[2] For ease of reference the tractor trailer will be called the "18-Wheeler" hereafter.

2

operating under a lease agreement, under the doctrine of statutory employer and definitions at 49 C.F.R. Sect. 390.5 and leasing requirements of 49 C.F.R. Sect. 376.12 which provides the authorized carrier lessee (FedEx Freight, Inc.) shall have exclusive possession and control and use of the equipment and shall assume complete responsibility for the operation of the equipment.

7. 49 C.F.R. Sect. 390.1(e)(1)-(2) requires that every employer shall be knowledgeable and comply with all regulations and that every driver shall be instructed regarding and shall comply with all applicable regulations.

8. 49 C.F.R. Sect. 383.11 also requires professional drivers to be knowledgeable in the safe operation of commercial motor vehicles, which includes the importance of a proper visual search and proper visual search methods including seeing ahead and speed management including speed, stopping distance, shape of the road, and visibility. 49 C.F.R. Section 383.11 also requires:

> a. commercial motor vehicle drivers must also be knowledgeable in night operation which includes low illumination, variation in illumination, other road users, headlights, and other road users;
>
> b. commercial motor vehicle drivers must also be knowledgeable in hazard perception of road characteristics and road user activities;
>
> c. commercial motor vehicle drivers must also be knowledgeable in emergency maneuvers and when and

3

how to make emergency maneuvers, including evasive steering, and emergency stop.

9. The 18-Wheeler was headed east on Interstate 40 at or near mile marker 262 and approached a curve, in the dark night/early morning driving conditions with low illumination.

10. Driving in late night and early morning hours are well-known in the trucking industry as the "danger zone", which means that driver error rates dramatically increase when operating commercial motor vehicles during these times. Even if a professional driver is well-rested and has not exceeded the maximum allowable hours for driving times, the circadian rhythm of the driver's body and brain negatively influences the driver's alertness and increases the risk of harm to the driving public.

11. This increased risk caused by danger zone driving was known to FedEx, a highly sophisticated transportation and logistics company, and an authorized motor carrier.

12. As specified in Model Commercial Driver License Manual and the Tennessee Commercial Driver License Manual at 2.11, Driving at Night is more dangerous. "You are at greater risk when you drive at night. Drivers can't see hazards as quickly as in daylight, so they have less time to respond. Drivers caught by surprise are less able to avoid a crash".

4

Case 2:17-cv-00064   Document 1   Filed 10/25/17   Page 4 of 14 PageID #: 4

13. Many major trucking companies and/or their insurers have issued memos on the dangers of night driving and overdriving the headlights. Overdriving the headlights simply means that an 18-Wheeler cannot stop within the visible distance illuminated by the headlights by the time the driver sees and perceives a hazard.

14. Despite this known risk of danger zone driving, FedEx chose to dispatch the 18-Wheeler and its professional driver on interstate highways during this time.

15. At or near the time immediately before the crash, the FedEx Driver operated the 18-Wheeler at or slightly below the maximum allowed speed limit.

16. A reasonable safe driver should appreciate that a roadway curve and low illumination could cause difficulty seeing, perceiving and reacting to hazards in the roadway. The risk of driving at or near the maximum allowable speed (likely on cruise control) when combined with danger zone driving, under these conditions created an increased risk of harm in that the FedEx Driver would not be able to stop within the time and distance required in the space illuminated by the 18-Wheeler headlights.

17. Despite this increased risk, the FedEx Driver, while in the course and scope of his employment or statutory employment, maintained full speed around a roadway corner whereby he could not see and perceive and stop within the distance illuminated by the 18-Wheeler headlights. Thus, it was a near certainty that if any roadway hazard was present in or near the curve, the 18-Wheeler would strike and collide with that hazard and be unable to stop.

18. In the moments before the inevitable crash, plaintiff Jonathan Heslet (or "Mr. Heslet") was operating a moving truck owned by Penske Truck Leasing ("Penske Truck"). Plaintiff leased the truck owned by Penske Truck Leasing in Texas and was in the process of moving to Bethesda, Maryland, as he had recently retired from military service and accepted a civilian job in the metropolitan Washington, D.C. area.

19. Shortly before the crash, Mr. Heslet had experienced a sensation of loss of power in the Penske truck and it began to slow. Mr. Heslet attempted to pull off I-40 eastbound near mile marker 262, the shoulder of the road was soft and while pulling back onto the roadway, the rental truck was caused to overturn on its side in the roadway.

20. The Penske truck had a small U-Haul trailer in tow, which had illuminated taillights, which were activated and visible to approaching traffic before the crash with the FedEx truck.

21. Regardless, proper hazard perception, speed management and driving at a safe speed would provide the ability of an oncoming vehicle to be able to stop within the distance illuminated by the headlights.

22. The Penske Truck was exactly the type of roadway hazard that a reasonably safe commercial motor vehicle driver is expected to be knowledgeable in how to avoid collisions with such a hazard.

23. In the moments thereafter, the 18-Wheeler rounded the corner, striking the overturned PenskeTruck.

24. There is no indication that the FedEx driver made any attempt to stop or apply brakes prior to the collision, which likely was caused by distracted and inattentive driving.

25. The FedEx driver was not properly knowledgeable or trained in applicable maneuvers which would have prevented this crash.

26. As a result of the crash by the 18-Wheeler on the Penske Truck, Mr. Heslet suffered severe injuries and damages, which included a severely fractured back and other injuries for which he underwent an extensive hospital admission at Vanderbilt University Medical Center. Mr. Heslet was and is permanently injured and has spent many weeks in a back brace and unable to work or even walk without assistance. He is currently undergoing extensive physical therapy in an attempt to regain his ability to walk independently.

## COUNT I—NEGLIGENCE

27. The preceding paragraphs are hereby re-alleged as if fully restated herein.

28. At all times material hereto, the Defendant FedEx Freight, Inc. had duties to exercise reasonable care in the hiring, training and retention of drivers, including Defendant Phillips, in the operation of commercial motor vehicles to avoid causing injuries to others, including Plaintiff Jonathan Heslet. These duties included the duties to comply with all applicable provisions of the Federal Motor Carrier Safety Regulations and Tennessee regulations and laws regarding the operation and maintenance of commercial motor vehicles.

29. FedEx Freight, Inc. breached the duties it owed to Plaintiffs by committing one or more of the following acts of negligence:

    a. Failing to properly hire properly qualified and/or trained drivers for operation of commercial trucks, including Defendant Phillips;

    b. Failing to properly train drivers for operation of commercial trucks, including Defendant Phillips;

    c. Negligently retaining drivers, including Defendant Phillips;

    d. Allowing, encouraging, and/or permitting its drivers to operate commercial trucks while impaired, fatigued or distracted;

    e. Failing to promulgate and enforce adequate policies and rules regarding the operation of commercial trucks;

    f. Otherwise failing to use reasonable care.

30. These breaches proximately and legally caused the injuries and damages, as set forth more fully below.

## COUNT II—NEGLIGENCE/NEGLIGENCE *PER SE*

31. The preceding paragraphs are hereby re-alleged as if fully restated herein.

32. The FedEx Driver was negligent (for which the Defendant FedEx Freight, Inc. is liable as a statutory employer) and failed to use reasonable care by committing one or more of the following acts or omissions:

    a. Negligently and carelessly operating a large commercial vehicle without keeping a safe and proper lookout for other vehicles on the roadway;

b. Failing to avoid a collision, when in the exercise of reasonable care, the collision could have been avoided by Defendant;

c. Operating a large commercial vehicle with disregard for the safety of others, including Plaintiff Jonathan Heslet;

d. Failing to slow due to the conditions;

e. Otherwise failing to exercise reasonable care.

33. The FedEx Driver was also negligent *per se* (for which the FedEx Freight, Inc. is liable as a statutory employer) by the following violations of Tenn. Code Ann. (which were in effect at all relevant times) of which Mr. Heslet was a member of the class intended by the statutes to protect and which was in full force and effect on the date in question:

   a. § 55-8-124, Following too closely;

   b. § 55-8-136, Driver's failure to exercise due care;

   c. § 55-8-152, Speed too fast for conditions;

34. As a proximate and legal result of the Defendant's negligence and negligence *per se*, Plaintiffs suffered injuries and damages that are more fully set forth below.

## COUNT III - DECLARATION OF UNCONSTITUTIONALITY

35. The preceding paragraphs of this Complaint are hereby re-alleged as if fully reinstated herein.

36. Plaintiffs seek, pursuant to Tennessee's Declaratory Judgments Act, Tenn. Code Ann.§ 29-14-102, a judicial determination of their legal rights with respect to

9

Tenn. Code Ann. § 29-14-102, as well as a judicial determination that Tenn. Code Ann. § 29-39-102 violates the Tennessee Constitution.

37. Plaintiffs allege they have suffered non-economic damages, which, based on the severity, greatly exceed the limits set forth applicable limitations of damages under Tenn. Code. § 29-39-102.

38. The limitation on non-economic damages codified at Tenn. Code Ann. § 29-39-102 violates Plaintiffs' fundamental and "inviolate" right to trial by jury, guaranteed in Article 1, § 6 of the Tennessee Constitution, by supplanting the jury's determination of facts proven at a fair and proper trial, namely, appropriate compensation, and substituting a legislative determination, divorced from the facts of the case, that overrides the jury's constitutionally guarantee determination of those facts.

39. The limitation on non-economic damages codified at Tenn. Code Ann. § 29-39-102 violates the separation of powers mandated by Article II, §§ 1 & 2 of the Tennessee Constitution by permitting the General Assembly to require judges to enter judgment at odds with a jury's fair and proper verdict and the record developed in the case, as well as arrogate to itself the judicial power to suggest remittitur, and by permitting the General Assembly impermissibly to encroach upon the adjudicative function of the judicial branch.

40. The limitation on non-economic damages codified at Tenn. Code Ann. § 29-39-102 violates the Plaintiffs' fundamental right to a full remedy, guaranteed in Article I, §§ 8 and 17 of the Tennessee Constitution.

41. A judicial determination of Plaintiffs' rights is necessary and appropriate at this time because the uncertainty as to whether Tenn. Code Ann. § 29-39-102 can be applied constitutionally has a direct and immediate impact on how Plaintiffs prepare for trial, and the future course of this litigation will be controlled by resolution of these constitutional challenges.

42. A judicial determination of Plaintiffs' rights is necessary and appropriate at this time because Tenn. Code Ann. § 29-39-102(g), which provides, that the existence of caps, "shall not be disclosed to the jury, but shall be applied by the court to any award of noneconomic damages." That provision is inconsistent with an instruction to the jury that it will find the amount of noneconomic damages.

43. Jurors, as a matter of law, are presumed to know the law, and therefore to know of the existence of the caps, despite the preclusion of any mention of them.

44. Wherefore, Plaintiffs seek declaratory judgment, as set forth above.

## INJURIES AND DAMAGES

45. The preceding paragraphs are hereby re-alleged as if fully restated herein.

46. The conduct of Defendant FedEx and its driver was, both at common law and/or statutorily, reckless, willful, knowing, grossly negligent, wanton, and in such total disregard for the safety of others that an award for punitive damages is necessary to deter such conduct in the future. As a result of the foregoing, in addition to compensatory damages, Plaintiffs are entitled to recover punitive damages from Defendant in order to deter Defendant and similarly situated third parties from committing the same or similar misconduct which endangers the general safety of

the public. As a legal result of the aforesaid negligence, gross negligence, negligence per se and/or recklessness of the Defendant, Plaintiff Jonathan Heslet suffered and sustained severe, serious physical injuries, pain and mental anguish. As a result of their acts, the Defendant is liable for the pain and suffering of Plaintiff Jonathan Heslet.

47. As a direct and proximate result of Defendant's wrongful conduct as previously alleged herein, Plaintiff Jonathan Heslet sustained physical and mental pain and anguish, for which Plaintiffs are entitled to recovery compensatory damages against all Defendant.

48. As a direct result of the injuries to Plaintiff Jonathan Heslet, the Plaintiff Brandy Heslet has been deprived of the support, comfort, society, advice, daily acts of love, affection and services of her husband, all of which were substantial and of great value for which she is entitled to recovery against Defendant.

49. Defendant is liable for the full amount of economic and non-economic damages recoverable for the injuries of Plaintiff Jonathan Heslet.

50. Plaintiff Jonathan Heslet was seriously injured as a proximate and legal result of the negligence, gross negligence, negligence *per se* and recklessness of the Defendant.

51. Defendant is liable for the economic and non-economic value of all other damages recoverable under the law.

52. The acts complained of legally caused Plaintiffs' injuries and damages including, but are not limited to:

1. The loss of support from the reasonably expected earning capacity of Plaintiff Jonathan Heslet;

2. The loss of services of Plaintiff Jonathan Heslet;

3. Loss of consortium and tangible services of Plaintiff Jonathan Heslet, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by Plaintiff Brandy Heslet, who has become a primary care-taker of her husband;

4. The mental and physical suffering endured by Plaintiff Jonathan Heslet as a result of his injuries;

5. Medical expenses necessitated by the injury, including expenditures for doctors, nurses, hospital care, medicine and/or drugs;

6. All other damages at law or equity.

**WHEREFORE**, PLAINTIFFS, Jonathan Heslet and Brandy Heslet, by and through their attorneys pray that the following relief be granted:

a. a trial by jury;

b. for Summons and Complaint to issue against the Defendant;

c. for judgment of compensatory damages against Defendant in an amount of economic and non-economic damages the jury believes to be just, fair and equitable, given the facts and after hearing the evidence;

d. for judgment of punitive damages against Defendant;

e. for court costs, discretionary costs; and,

f. for all other and further relief as this Honorable Court deems just and equitable.

**WHEREFORE**, PLAINTIFFS, Jonathan Heslet and Brandy Heslet, further request that all issues in this case be tried before a jury of duly qualified and impaneled citizens of our community.

Respectfully submitted,

WRIGHT LAW, PLC


*/s/Matthew E. Wright*
Matthew E. Wright, #22596
219 Third Ave., N.
Franklin, TN 37064
Phone: 615-812-1351
Fax: 615-468-4540
mwright@wrightlawplc.com
www.wrightlawplc.com

Troy Chandler, Petition *Pro Hac Vice* to be submitted
CHANDLER McNULTY, LLP
6575 West Loop South, Suite 605
Houston, TX 77401
Phone: 713-997-8310
Fax: 713-997-8279
troy@chandlermcnulty.com

*Attorneys for Plaintiffs*

14